O’Neall, J.,
dissenting. I regard the decision in this case as completely overturning all the rules of location heretofore established. Por, if this verdict stands, course and distance will control natural marks and boundaries. These are found, and by the location for the defendant are entirely lost sight of. For to talk about the Tory trail, a path used by Tory horse-thieves in the Revolution, and used by no human being since— the trace of which, sixty years ago, when the Cooper road was laid out, was that of an oída bandoned track, crossed here and there by it — as the road to Pine Log, is, to my-mind, too absurd to be seriously relied on. Take it, and compare it with the location produced, with that of the road to the Pine Log laid down in the original plat, and it becomes plainly unreasonable to suppose that it was the road delineated. For the “ Tory trail” is not called for, and it certainly wobld have been so designated, if it had been intended to be laid down, as that was the name by which it was then. known. So, too, it does not run through the centre of the grant, as located by it, but angling through one corner, it reaches Edisto river entirely *156 outside of the grant, while the Pine Log road laid down runs from tire river through the centre of the tract. The great argument is, that when it leaves the plaintiff’s grant, it corresponds with the delineation on another grant to Minor, lying on the line marked S. E. on this grant.' There would be great force in that if that survey had been traced on the ground by the surveyors; then, indeed, if the re-survey thus made had carried the road, there found as the Tory trail, to the point where found on this, it would have been a strong evidence of identity; but to lay that old plat down by the side of this survey, and claim the identity of the roads by their happening to come together, is to assume that that survey was accurately made, and laid down a road then correctly, when another plat, made by the same man, within a very short time, laid it down wrong.
The Court, in assuming now such a position, is deciding that the Tory trail is the road of this survey, when in Evans vs. Weeks, decided at November, 1853, the decision of the jury was, that the road from White Ponds was the road supposed (a).
*157 The Court is, I think, to be consistent, obliged to fall back on their location in Evans vs. Weeks, 6 Rich. 83, and which, *158 with due deference to the reasoning of my brethren now and formerly, was, I think, not only unsupported by authority, but *159 absolutely at war with it. Here, as a vindication of my position, I will simply call attention first to a few cases. In Coates vs. Matthews, 2 McC. 100, course and distance was overruled by little Salada river, a stream very far from,being a very permanent one. In it, Judge Johnson said, “ Course and distance must yield to actual marks, whether they are natural or artificial.” In Wash vs. Holmes, 1 Hill, 15, it became my duty, *160 twenty-two years ago, to say that a location was governed, 1st, by natural boundaries, such as rocks, mountains, rivers and creeks ; 2nd, by artificial marks ; 3d, adjacent boundaries ; 4th, course and distance; 5th, shape of the plat. In Fulwood vs. Graham, 1 Rich. 491, these rules were applied to give great extension to lines against the distance laid down, and to vary courses — indeed, to absolutely abrogate them. If that case -was decided wrong, as I have heard one of my brethren say, I ask how did it happen that Sturgeon vs. Floyd, 3 Rich. 83, was governed by it, and that as accurate a Judge as my late brother Evans, should have said, “ Since the decision of the case of Fulwood vs. Graham, 1 Rich. 491, it is no longer a question that natural marks shall control course and distance, even though the line should exceed the length four or five-fold.”.
On the present occasion it must be remarked, that the original plat and grant calls for Edisto river : the location supported 'by the Court does not touch it. But it is said, you cannot locate the land so as to reach it. It is as plain as a sun-beam that it can and will be done, whenever the grant is located by boundaries and natural marks: indeed, Barillon’s survey, as will be seen by referring to the case in November, 1853, did reach the river, as a boundary. To locate the land according to natural marks and adjacent boundaries, begin at the Black Jack, the acknowledged corner, pursue Taylor as a boundary, until you reach Shaw’s creek, thence down it to James Johnson’s grant (called for as a boundary), which must be followed till you reach the Edisto ; stop there, and go back to the Black Jack, and run the line thence, on the course of the plat, to the Edisto river, where the survey stopped, going round the other way, and the tract is located, and the defendant’s claim is within it. If this be not a correct location, I confess I shall have the whole principles of location to learn over.
Glover, J., having been of counsel, did not hear the case.

Motion dismissed.

 The following is tlie report, grounds of appeal .and decision of the Appeal Court in the caso referred to
The report of his Honor Judge O’Heal, before whom the case was tried at Barnwell, Fall Term, 1S53, is as follows:
“This was an action o-f trespass, to try titles to a fcract of eleven thousand seven hundred and thirty acres, granted 5th August, 1793, to Wm. Minor, surveyed 7th May, 1790. In the grant the land is described as lying on both sides of the road to the Pine Log, and partly on Shaw’s Creek and Edisto River, hounded south-east by George Taylor’s land, east by Wm. Minor,'west by James Johnson, Edisto River and Shaw’s Creek. In the plat these boundaries appear to have been described wrong, unless they are taken as lying on lines running south-east, &c., then they would be right, except the Edisto should have, been called for before James Johnson’s land.
“The road to the Pine Log is laid down about midway of the plat. The paper title of the plaintiif was fully proved. A copy plat to James Johnson, for one thousand acres was»given in evidence. The defendant’s claim rested on a grant to Patrick Kitchens, dated 5th September, 1814, for one thousand acres. The defendant is in possession under his heirs; this tract lies within the lines of the Minor grant, as contended for by the plaintiif. A trespass was admitted. John N. Barrillon, the surveyor, proved that since the former trial, he has made another *157 survey; that starting at tbe Black Jack Corner, Taylor’s survey, and giving course and distance on tbe line running oast, it would cross tbe Cooper Road, but would not reach the White Pond Road, crossing at Pine Log. He ascertained, he said, the age of tbe Cooper Road to be fifty-five years, and that pf the "White Pond Road to be sixty-three years. This he did by cutting out a blaze on each, and counting the growth of the trees. Giving distance from the White Pond Road, according to the plat, it would go beyond the defendant’s grant. Running thence the course of the plat, he struck the Edisto : pursuing it a very short distance, he reached Johnson’s land; pursuing it he came to Shaw’s Creek — thence up it to where the line from the Black Jack, following Taylor’s boundary, reached the Creek. This'he thought the true location.
“Lawrence P. Hext, another surveyor, thought the location ought to be by course and distance. There were no marks, except the Black Jack, and he thought the lines had never been run by the original surveyor. He did not think the age of a blaze could be accurately ascertained by counting growths. Mr. Garvin, another surveyor, was not present; the defendant’s lessor, (Kitchens,) stated on oath what he expected to prove by him. This was admitted as his evidence. I have it not; the counsel can print it with this report. Isaac Johnson proved that in the revolution there was a path called the Tory Trail, crossing the Minor Line near Toney’s field, and running thence to the Pine £og. Mr. Bellinger produced the acts of the legislature, showing that the Cooper Road was directed in 1796 to be opened, and the White Pond Road in 1792. The Jury were instructed that the opinion of tbe Court of Appeals in this case must govern them, unless they found some facts in the case, varying it from the former trial. The only things, I thought, were, that tbe Cooper Road was now shown to be entirely too young to have existed at the grant. The White Pond Road wasolder than the grant, though younger than the survey, according to the Act of the Legislature. The blaze, if Barrillon was right, showed that the road existed in 1790. Tbe Jury were told, if that was the road indicated in the plat and grant, it was a circumstance in favor of the plaintiff’s location, for the grant called for land on both sides of the road. The Other thing was, the Edisto was now found to meet the line run from the terminus of the plat distance from the White Pond Road. It was not, however, in its proper place. I told the jury that unless these circumstances clearly satisfied them that Barrillon’s location was right, they must find for the defendant. They found for the plaintiff, according to Barrillon’s location, and I confess it aecords with hay views formerly and now.”
The defendant appealed and moved for a new trial on the grounds, viz.:
1. Because the verdict locates the land in dispute by running east along Johnson’s land, to the terminus thereof, which is at Edisto river, which is the identical location found by the Jury on the first trial, and set aside by the Appeal Court. Neither the river for a boundary, nor the road as a station!
2. Because the location contended for by the defendant, and adopted by the Ap *158 peal Court when ordering a new trial, viz.: fixing the eastern boundary by course and distance, is the correct location.
3. Because the only new fact developed on the second trial, (when the plaintiff made a weaker case,) was, that the plaintiff's surveyor, (J. hi. Barrillon,) from examining the blazes of two trees, concluded that the Cooper road was too young for the original survey, and that the White Pond road was laid ouc 63 years prior to his last survey, on 26th September, 1853, viz.: on 26tb September, 1790, which was several months subsequent to the original survey, 27th May, 1790 — whereas, it appeared that the White Pond road, the oldest road of the two, was laid off by Act of Assembly, December, 1792; so that neither of the roads existed on the 27th May, 1790, when the original survey was made, and could not have been the road to Pino Log, lepresented in the said survey, on which survey the grant was predicated. and to which the said grant expressly refers, for the shape, form and marks of the land, “ as represented by a plat hereunto annexed.”"
4. Because the only other plausible location, on which the verdict might be sustained, is to consider the White Pond road as a station, which is in direct contravention to the said decision of the Appeal Court; and on the second trial it was provod that the said White Pond road did not exist at the time of the said original survey.
5. Because the said verdict is in direct opposition to the decision of the Appeal Court pronounced at December Term, 1852, in the very same case, between the very same parties, on the very same facts, (exceptas above excepted,) and touching the very same questions of law.
6. Because, even if the said decision were obnoxious to the objections urged by the plaintiff's counsel before the jury, (as it is not,) and even if it could not be shown, (as it can be shown,) to be perfectly correct — founded on a true conception of the facts, and in conformity to the well settled rules of location — nevertheless, the said decision was the law of the case, and as such ought to have been respected and implicitly obeyed by the jury.
7. Because the said verdict, unless set aside, will be of evil precedent — not only sanctioning similar verdicts in times past, hut giving license in times future, to impugn and set at defiance the most solemn adjudication of the highest tribunals of the State.
8. Because the verdict is contrary to law and evidence.
Curia per O'Neall, J. In this case it is not proposed to question the opinion heretofore expressed.
It went to the jury as their guide to a decision, but they were told, if there were facts now found to exist varying the case from what it was before, that then they might possibly find a location different from that advised by the opinion.
The first of these was, where was the road leading to the Pine Log spoken of in the grant, and delineated on the plat? If they believed, that that was the White Pond road, then it was a strong circumstance in favor of the plaintiff's location. *159 Eor the grant called for land on both sides of the road. The proof in this behalf was submitted to them.
Their attention was next directed to Edisto river, which, it was now found, could be reached by a line closing as the plaintiff desired, and thus all the boundaries of the plat and grant to Minor be obtained. The jury found the White Pond road to be the road, and I think they were perfectly right. The growth of the tree chopped, showed it had been blazed for a public road in the year 1790. This was the year of the survey. In the year 1791, Johnson was authorized to build a bridge at Pine Log. There must have been some road, there, before that time. In 1792 the road from Hampton’s bridge on Saluda to Pine Log, White Ponds and Sisters ferry on Savannah was directed to be opened, and made a public road. This, no doubt, referred to an existing road which was then made public. The Tory trail spoken of by Mr. Johnson, was a mere track pursued by the Tories in the Revolution, from a horse pen near Toney’s field to Pine Log and Upper Three runs. No trace of it remained, except at the field spoken of; there was no proof that it was ever used after the Revolution. Under such circumstances it could not bo looked to. The Cooper road was entirely too young. Under these circumstances the jury very properly came to the conclusion that the White Pond road was the road indicated.
When it was thus ascertained, land on both sides must be found. How much east? The surveyor could not do otherwise than measure the plat from the road and give the distance. This done, the line closed to the Edisto, James Johnson’s land and Shaw’s creek. But it is said the jury have only found from tbe northeast corner of James Johnson’s land, on the river, to the corner reached on a direct line to the line running east from the road.
This was right; for the plaintiff’s deed, executed twenty-two years ago, conveyed to him tbe land to that corner, and by that line. Although the grant may cover more, yet he had no claim beyond the line found.
The former opinion admitted the doubts attending the location. It merely advisecj, upon the facts then before the Court, the location suggested. It was not intended to say this is the law of the case. The defendant has had the full benefit of it, and yet, on other facts, the jury, as they had the right to' do, adopted another conclusion.
The motion is dismissed.
Wardlaw and Withers, JJ. We concur in the result simply.
Whither and Glover, JJ. We dissent.